# SHERMAN v. JEROME.

APPEAL FROM THE CIRCUIT, COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

Argued December 17, 1886. — Decided February 7, 1887.

A clause in a will. gave to C the interest of $4000 for life, " the said sum " of $4000 to be equally divided, at C's death, between M, S, and J, or so many of them as should then be living. The will appointed P executor for New York, and G and D executors for Michigan. G and D, before the death of C, executed a paper and recorded it in Michigan, by which they, as executors, "set apart for the benefit of" C and "to be held" by them "in trust for the purpose of paying" said interest, and, upon the death of C, "for distribution" among M, S, and J, a bond and mortgage for $4000, on land in Michigan, given to the testator in his lifetime, which was overdue seventeen months when the paper was executed. None of the legatees assented to this proceeding or ratified it or waived their rights, nor was it authorized by any order of any court. C having died without the full interest on the $4000 having been paid to him, his administrator and M, S, and J filed a bill in equity in Michigan against G and D,

as executors, praying for an accounting and for the payment of the legacies. The executors set up as a defence that the bond and mortgage were the sole fund for the payment of the legacy, and that the general estate was not liable for it; *Held*, that the paper was revocable at any time, and did not amount to the decisive and irrevocable act which must exist to have the effect to transmute the property.

BILL in equity. The case is stated in the opinion of the court.

*Mr. George W. Miller* for appellants. *Mr. James C. Smith, Jr.*, was with him on the brief.

*Mr. J. H. McGowan* for appellees. *Mr. Benton Hanchett* filed a brief for same, submitting on his brief.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

In 1872, Sarah E. Little, then a resident of Perry, Wyoming County, New York, died at that place, leaving a last will and testament executed August 30, 1872, and a codicil thereto, executed September 9, 1872. The will, after giving sundry money legacies, proceeded as follows: "Fourth. I give and bequeath to Charlotte Sherman the interest of four thousand dollars during the term of her natural life, and at her decease the said sum of four thousand dollars shall be equally divided between Maria Cameron, Sarah E. Morse, and James Sherman, children of C. A. W. Sherman, or so many of them as shall then be living." By subsequent articles other money legacies were given, and then followed these articles: "Twenty-second. All bequests herein contained to persons residing in New York, and that to Maria Cameron, I desire paid first, and the remainder as fast as the money is available." "Twenty-sixth. I hereby appoint Henry N. Page my executor for carrying out the provisions of this my last will and testament, so far as they relate to parties and property in this state (in New York), and Charles W. Grant, of East Saginaw, and D. H. Jerome, of Saginaw City, Michigan, my executors for everything, so far as they relate to parties and property in the State of Michigan and elsewhere, and my executors are hereby authorized and

empowered to sell and convey any real estate of which I may be possessed as they shall deem for the best interest of the legatees."

On the 24th of December, 1881, the present suit in equity was brought, in the Circuit Court of the United States for the Eastern District of Michigan, by Charles A. W. Sherman, as administrator of Charlotte Sherman, deceased; Maria Cameron; James Sherman; and Sarah E. Morse; against David H. Jerome and Charles W. Grant. The bill sets out the foregoing provisions of Little's will and states these facts: Charles A. W. Sherman is the C. A. W. Sherman named in the will. Charlotte Sherman was his wife, and died in May, 1880, and he was appointed her administrator in December, 1881. In January, 1873, the will of Little was proved before the surrogate of Wyoming County, New York, and letters testamentary were issued to Page, named in it as executor. In March, 1873, letters testamentary on the will of Little were issued by the Probate Court for Saginaw County, Michigan, to Grant and Jerome. Page, in New York, and Grant and Jerome, in Michigan, entered upon their duties as executors. In New York, Little left property not exceeding a few hundred dollars in amount, which went into the hands of Page, and was used in defraying funeral expenses, leaving nothing in his hands with which to pay the legacies. Little left a large real and personal estate in Saginaw County, Michigan, which came into the hands of Grant and Jerome, as executors, and they have now in their hands a greater amount of the estate than is sufficient to pay to the plaintiffs their legacies and to pay all the other legacies. Grant and Jerome paid to Charlotte Sherman the interest on the $4000 down to April 1, 1876, but nothing more has been paid on the legacies to the plaintiffs. Maria Cameron, Sarah E. Morse, and James Sherman were living at the time of the death of Charlotte Sherman, and are still living. The bill prays for an accounting by the defendants, as executors, and for the payment to the plaintiffs of the amounts due to them for the legacies.

The answer admits that a part of the estate left by Little in Michigan came into the hands of Grant and a part into the

hands of Jerome. It avers that, aside from the Coats bond and mortgage hereafter mentioned, Grant has none of the estate now in his hands, and Jerome has $9621.75, including any fees, commissions or compensation for his services. Accounts of receipts and disbursements by each defendant, as executor, are annexed to the answer. It then sets forth, that the defendants believed it to be their duty to set apart and invest, out of the estate, $4000, the interest of which, as they should be able to collect it, should be paid to Charlotte Sherman during her lifetime, and the principal be retained by them in such investment, and, after her decease, be paid over to Maria Cameron, Sarah E. Morse, and James Sherman; that, for that purpose, they took out of the estate and set apart a bond executed by one Coats to Little, in the penalty of $10,-000, dated May 1, 1869, conditioned to pay $1000 May 1, 1871, $1000 May 1, 1872, and $3000 May 1, 1873, with interest annually on all sums unpaid at 10 per cent., and a mortgage given to secure the bond, bearing the same date, executed by Coats to Little, mortgaging a parcel of land in East Saginaw, Saginaw County, Michigan, and recorded in the office of the register of deeds for Saginaw County; that, to set apart the bond and mortgage, they, on the 20th of October, 1874, executed and acknowledged the following instrument in writing, which was recorded in the office of said register of deeds on the same day:

"Whereas, by the last will and testament of Sarah E. Little, the interest of [the] sum of four thousand dollars is bequeathed to Charlotte Sherman for her life, and upon her decease the said sum of four thousand dollars is to be divided between parties therein named;

"And whereas, among the assets of the estate of said Sarah E. Little is a bond and mortgage made by Alice L. Coats to said Sarah E. Little, dated May 1, 1869, for the sum of five thousand dollars, on which there is now due four thousand dollars, and which mortgage is recorded in the office of the register of deeds of Saginaw County, Michigan, in liber O of mortgages, on pages 324 and 325:

"Now, therefore, we, the undersigned, executors of the said

will, do hereby set apart for the benefit of said Charlotte Sherman, and to be held by us in trust for the purpose of paying the said interest, and upon her decease for distribution among the persons named in said will, the said bond and mortgage.

"In witness whereof, we have hereunto set our hands and seals, this twentieth day of October, A.D. 1874.

"DAVID H. JEROME.   [L.S.]

"CHARLES W. GRANT.   [L.S.]

"Signed, sealed, and delivered in presence of —

"BENTON HANCHETT,

"D. R. RICHARDSON.

"State of Michigan,      } *ss.*
County of Saginaw,

"On this 20th day of October, A.D. 1874, before me, a notary public in and for said county, personally came the above-named David H. Jerome and Charles W. Grant, to me known to be the executors of the last will of Sarah E. Little, deceased, and acknowledged the foregoing instrument by them subscribed to be their free act and deed.

"BENTON HANCHETT,

*Notary Public;*"

by means whereof they set apart the bond and mortgage, as an investment in their hands, to be held by them as executors under the will, in trust, from which to collect the interest on the sum of $4000, represented by the bond and mortgage, as principal, and pay the same to Charlotte Sherman, and to collect and receive the principal, and pay the same, in pursuance of the direction of the will, to Maria Cameron, Sarah E. Morse, and James Sherman; that they made the investment properly, and in accordance with their duty; that their action was, in effect, the same, in all respects, as if they had taken the sum of $4000 in money and purchased a security for that amount, or had loaned that sum on security for the purpose of obtaining interest and retaining the principal to meet the payment of the legacy; that the investment was made according to the

best of their judgment, and in good faith; that they then believed the security was ample, and that the bond and mortgage were a desirable security for providing for the legacy; that Coats was then believed by the defendants to be worth, in her own right, the sum of at least $75,000 over and above the real estate covered by the mortgage; that they then believed also that the real estate was a good and sufficient security by itself to secure the payment of the $4000 and interest thereon; that the money secured by the bond and mortgage was not collected from Coats, because they believed the security, as it stood, was an entirely satisfactory and altogether desirable one, and an investment as good as they could make; that on such setting apart of the security, Charlotte Sherman was informed thereof, and thereafter Grant collected from Coats, on the bond and mortgage, four sums of $200 each, which he paid to her, he having, in January, 1874, paid to her $200, all on account of her legacy; that no other sums have since been collected by the defendants on the bond and mortgage, and there is due thereon $4000 of principal, and interest from May 1, 1876; that when the interest ceased to be paid the defendants notified Charlotte Sherman thereof, and asked her advice and direction as to foreclosing the mortgage, and since her death they have requested the advice and direction of the plaintiffs in regard to collecting the bond and mortgage, and have advised them of the setting apart of the security; that the defendants have offered, and now offer, to transfer the bond and mortgage to the plaintiffs; that they have paid $132.43 for taxes on the mortgaged land, which were a lien on it, and which should be reimbursed to them; that since the investment, Charlotte Sherman and the plaintiffs have had no right to claim payment of any part of the legacy out of the estate of Little; and that the investment has remained the sole fund out of which the legacy should be paid. The answer then admits that the amount which came into the hands of the defendants from the estate of Little was sufficient, after paying all the debts of Little, to pay the legacy to the plaintiffs, and all the other legacies payable before that legacy, according to the directions of the will, but such amount and the es-

tate was not sufficient to pay all the legacies, not including the residuary legacy. It then avers that, according to the provisions of the will, it was not their duty to pay over the $4000 to Charlotte Sherman; and that the other legatees under the will always objected, after such investment had been made, to any other provision or payment being made out of the estate on account of that legacy.

It was stipulated by the parties that Charles A. W. Sherman was administrator of Charlotte Sherman, and that Page had not, at the time of the filing of the bill, or at any time, any funds in his hands belonging to the estate of Little, except as alleged in the bill.

The case was heard on bill and answer. A decree was made providing, that the defendants, as executors, have in their hands, and hold, said bond and mortgage, in trust for the payment to the plaintiffs of the legacy specified in the fourth clause of the bill; that the plaintiffs are entitled to the payment of the proceeds of the bond and mortgage, after deducting therefrom the expenses of the collection thereof, and the amounts paid, and to be paid, by the defendants for taxes on the property covered by the mortgage, to preserve the lien thereof, and the costs of this suit; and that the defendants foreclose and collect the bond and mortgage, by proper legal proceedings, and, out of the proceeds, retain the necessary and reasonable costs and expenses of such foreclosure and collection, and the amounts so paid, and to be paid, by them for taxes, and their costs of this suit, and pay the balance of the proceeds to the plaintiffs in payment and discharge of the legacy. From this decree the plaintiffs have appealed:

The only question necessary or proper to be disposed of on this appeal, in view of the pleadings and of the terms of the decree below, is whether the special matter alleged in regard to the setting apart of the bond and mortgage, is a defence to the suit.

At the time of the execution of the paper of October 20, 1874, the unpaid $4000 secured by the bond and mortgage had been overdue more than seventeen months. There is no suggestion that any of the legatees named in the fourth article of

the will consented to the setting apart of the bond and mortgage; or that there was any order of any court on the subject. The fourth article gives directly to Charlotte Sherman the interest of $4000 for life, and at her decease gives directly to such of the other three persons named as shall then be living, "the said sum of four thousand dollars," to be equally divided among them. Under these circumstances, the execution of the paper of October 20, 1874, by the defendants, setting apart the bond and mortgage, to be held by them in trust, even though the paper was put on record, amounted to no more than if they had retained the bond and mortgage, without executing any such paper, and had merely made a mental resolution to consider the bond and mortgage as set apart for this legacy. There was no second party to the paper, no transfer in it, no contract, and the beneficiaries never assented to it, or ratified it, or waived their rights ; and, in the absence of any such action by the beneficiaries, it was revocable at any time. Without deciding what course, if any, might lawfully have been taken by the defendants at the time in question, to effect the object they sought, we are of opinion that what they did was of no more avail to that end than the mere mental determinat on of the executor in *Miller* v. *Congdon,* 14 Gray, 114. Even though the mental determination took the shape of a written declared purpose, it did not amount to the decisive and irrevocable act which must exist to have the effect to transmute the property.

*The decree of the Circuit Court is reversed, and the case is remanded to that court, with a direction to take such further proceedings therein as shall not be inconsistent with this opinion.*