GERTRUDE P. SHEFFIELD & another *vs.* HORATIO G. PARKER & another, executors.

HORATIO G. PARKER & another, executors, *vs.* GERTRUDE P. SHEFFIELD & another.

Middlesex.    December 9, 1892. — March 3, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Equity — Finding of Judge — Executor's Account — Appropriation to Trust Fund — Interest — Maintenance — Commissions — Probate Appeal.*

The findings of a single justice of this court sitting in equity, upon questions of fact, will be sustained by the full court upon a report of the case, unless they are clearly erroneous.

A., by his will, authorized and directed his executors to set apart a certain sum from his general estate and invest it for the benefit of his son E., during his life, the fund to be paid over at E.'s death to his lineal descendants, or, if he should leave no descendants, to the trustees of a certain college. The executors, in 1877, invested a smaller sum in the stock of a certain trust company which they

testified they intended as an investment for this trust. In 1878, a letter from the secretary of the company which mentioned the issuing of a certificate, referred to the subscription as made by "the estate of A." The certificate under which they held the stock was in the name of "B. and C., executors of the will of A.," with no other reference to the trust. Neither of the executors, until 1890, informed E. or any one else that the stock was held as part of the trust fund. A statement of account made by one of the executors in 1882 treated the whole amount of the legacy which was to constitute the trust fund as a liability against the estate, and included the stock subscribed for among the general assets of the estate, and put upon it a certain valuation per share. Until the making of the probate account there was never anything on the books of the executors, either in their accounts with E. or elsewhere, to identify the investment as made on account of the trust fund ; and in a conversation one of the executors offered to convey to E. and his sister, the testator's other child, interested as a legatee under the will, other stock which belonged to the executors to make good a loss from this investment. *Held*, that there was evidence which well warranted the finding that the executors had failed to sustain the burden of proving an appropriation of the stock to the trust for the benefit of E. and his descendants.

A testator devised certain lands to his executors, in trust to sell and pay over a certain sum from the proceeds thereof to a college ; the surplus, if any, over said sum he gave to his children. The executors sold the land and before making payment to the college lent the proceeds on interest. *Held*, that the interest earned by said proceeds belonged, after settlement with the college, wholly to the children.

A testator, by his will, gave to his executors all debts due to him, and all his lands in certain States, in trust, "to collect the debts, and to sell any of the lands as fast as may be necessary for the payment of my debts, and the suitable maintenance of my family until my debts are paid, with the expense of executing this trust to that time." *Held*, that the executors were not required to furnish maintenance to the testator's two children after the expiration of more than nine years from his death, although some debts of the testator were still unpaid, and after the family had been broken up by the residence of his son for nearly two years at one time in a foreign country, and the marriage of his daughter, and the death of her husband, and the subsequent death of her mother, even though the mother until her death, and the daughter during the whole of this time, had continued to live in the homestead, and though the son and daughter were again both occupying the homestead ; and that the fact that the executors had made payments to the son and daughter as and for such maintenance after the expiration of said nine years, did not preclude the executors from charging such payments in their probate account against the other interests of said son and daughter in the estate.

Upon an appeal from a decree of the Probate Court on an executor's account, this court will not consider the question whether commissions for services in the management and sale of certain land shall be charged against the proceeds of the land, or against a general fund in the executor's hands for administration under a clause of the will, which provides, after payment of debts, for payment of pecuniary legacies, the form of the account giving to the legatees no notice of such a question.

Two APPEALS, the first by the children, and the second by the executors of the will, of Joel Parker, from a decree of the

Probate Court, dated September 9, 1890, upon the first account of the executors.  The cases were heard together by *Holmes*, J., and, at the request of the executors, reported by him for the consideration of the full court.  The facts material to the points decided appear in the opinion.

*S. Hoar*, ( *W. Sullivan* with him,) for the executors.

*L. S. Dabney*, for Gertrude P. Sheffield and Edmund M. Parker.

KNOWLTON, J.  This case comes before us on a report containing findings of fact of a single justice, and the evidence taken at the hearing.  So far as the decision depends on the findings of fact, the conclusions of the single justice must be sustained, unless they are clearly erroneous.  *Francis* v. *Daley*, 150 Mass. 381.

The most important question involved is whether the executors can be allowed in their account for an investment of $10,000 in the stock of the Equitable Trust Company, which they made in their names as executors.  They were authorized and directed to set apart the sum of $12,000 from the general estate of the testator, and invest it for the benefit of his son, Edmund M. Parker, during his life, the fund to be paid over at his death to his lineal descendants, or, if he should leave no descendants, to the trustees of Dartmouth College.  They were also authorized, under certain contingencies, to sell the testator's homestead, and invest and hold the proceeds as a trust fund.  This sale, however, has not been made.  The executors contend that their investment in the stock referred to was made for Edmund M. Parker, and that the stock has been held by them ever since as a part of the trust fund of $12,000 which it was their duty to create.  The evidence produced failed to prove, to the satisfaction of the judge who heard it, that at the time of the purchase the stock was appropriated to this trust " in such a sense as to give Edmund M. Parker the right at and from that moment to have it accounted for as his, or to prevent them from making a different disposition of it thereafter, if for any reason they should be so minded."  There is no evidence to show the subsequent appropriation of it to this trust, until after it had so far depreciated in value as to deprive them of the right so to appropriate it.  It was conceded that they had no right to make such an investment for the general purposes of the estate, and the justice therefore found that the decree of the Probate Court

was correct in disallowing this item in their account. The issue is narrowed to the simple question whether the judge should have found an appropriation to this trust by the executors when they took the stock.

It was held in *Miller* v. *Congdon*, 14 Gray, 114, and in *Collins* v. *Collins*, 140 Mass. 502, 506, 507, that, when a trust fund is to be created by an executor out of the assets of an estate, something more must be done by the executor in order to impress the trust on particular property than to hold the property with an intention that it shall constitute the trust fund. There must be some act of appropriation which transfers it to the trust fund and gives the beneficiaries the right to have it held for them. Doubtless the purchase of property by itself expressly to be held under the trust would be a sufficient act of appropriation; and there was evidence in this case from which a finding might have been made in favor of the executors. On the other hand, there was evidence which, without any imputation on the honesty or good faith of the executors, well warranted the finding that they had failed to sustain the burden of proving an appropriation of the stock to this trust. In the first place, the letter of February 27, 1878, from H. R. Bond, secretary, to the executors, which mentions the issuing of a certificate, refers to the subscription as made by " the estate of Joel Parker "; the certificate under which they held the stock was in the name of " Horatio G. Parker and Francis J. Parker, executors of will of Joel Parker," with no reference to the trust; the evidence tends to show that not until January, 1890, nearly twelve years after the stock was subscribed for, did either of the executors inform Edmund M. Parker, or any one else, that the stock was held as part of the trust fund; a statement of account made by one of the executors in 1882 treated the legacy of $12,000 which was to constitute the trust fund as a liability against the estate, and included the stock subscribed for among the assets of the estate, and put upon it the valuation of $60 per share; until the making of the probate account there was never anything on the books of the executors, either in their accounts with Edmund M. Parker or elsewhere, to identify the investment as made on account of the trust fund, and there was evidence of a conversation in which one of the executors offered to con-

vey to Edmund M. Parker and his sister, Mrs. Sheffield, the other legatee, interested in the general assets disposed of under the second clause of the will, other stock which belonged to the executors to make good the loss from this investment. We cannot say that the court was wrong in finding against the executors on the question whether the stock subscribed for was appropriated by them to the trust for the benefit of Edmund M. Parker and his descendants. For the purposes of the discussion, we have assumed without deciding that, if they had so appropriated it, the investment would have been one which they had a right to make.

The next question is whether the item of $1,000 interest on the proceeds of the sale of the 15–11 land should be accounted for by the executors as part of the proceeds given by the testator to his two children after payment of $50,000 to Dartmouth College.* This interest accrued from a fund which was to be kept by itself, of which a part belonged to the trustees of Dartmouth College, and the remainder to the two children of the testator. We are of opinion that the entire interest, as well as the principal which remained after the settlement with the trustees of Dartmouth College, belonged to the last mentioned legatees; that the account should be so stated, and, as the $1,000 has been used by the executors in paying charges against the estate, the estate should pay it to the children of the testator.

These legatees are not aggrieved by the refusal of the executors to continue to furnish them with maintenance under the will after December 31, 1884. The provision of the will under which payment was made was intended by the testator to secure maintenance for his family for a short time, while the assets of his estate were being collected and his debts being paid, and he doubtless contemplated their living together during that time in the family relation as members of one household.† The

---

* By a codicil to his will, the testator gave to his executors certain lands "in Township Fifteen (15) north of Range Eleven (11) west in the State of Michigan," in trust to sell and convey the same, and to pay over a certain portion of the proceeds of the sales to the trustees of Dartmouth College, to be held by them for certain specified uses, and the surplus of such proceeds to the testator's two children.

† By this clause of the will, the testator gave to his executors all debts due to him, and all his lands in certain States in trust, "to collect the debts,

word " maintenance " used in this connection does not point to the full support of all his descendants for an indefinite period, without reference to their place of residence or their manner of living. He naturally expected payment of his debts in the ordinary course of the settlement of his estate within two years. We think the word should not be construed to require such maintenance after the expiration of more than nine years from the testator's death, and after the family had been broken up by the residence of his son, for nearly two years at one time, in a foreign country, and the marriage of his daughter, and the death of her husband, and the subsequent death of her mother, even though the son and daughter were again both occupying his former home.

The charges in the form of commissions for services in the management and sale of Town 15, Range 11, seem reasonable, and it has not been contended that they should not be allowed in some form. The parties seek to raise the question whether they should be charged against the proceeds of land 15–11, or against the general fund in the hands of the executors for administration, under the second clause of the will. We are of opinion that this question is not properly before us. If the last mentioned fund should be insufficient, after paying debts, to pay the pecuniary legacies in full, the legatees to be paid from it would have an interest in the question sought to be raised. The form of the account gave them no notice of such a question, and we must therefore decline to consider it. The allowance of the account will leave the question open.

The decree of the Probate Court is to be corrected, by stating the account as to the $1,000 interest on the proceeds of 15–11 land as hereinbefore indicated, and otherwise the same is affirmed.

*So ordered.*

---

and to sell any of the lands as fast as may be necessary for the payment of my debts, and the suitable maintenance of my family until my debts are paid, with the expense of executing this trust to that time." For several years after the death of the testator's widow, and prior to the payment of the debts of the testator, the executors continued to make payments to the son and daughter as and for maintenance, charging them as such in their books. The amount of these payments they now sought to charge against the other interests of the son and daughter in the estate.