WILLIAM F. MOOERS, executor, *vs.* MARGARET L. GREENE
& another.

Suffolk. November 6, 7, 1930. — January 20, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Executor and Administrator,* Continuation of going business.

By his will, one, who for many years had conducted a business of build-
ing and repairing wagons and truck bodies on encumbered real estate
in two locations in Boston and who died leaving a widow and a minor
son, appointed a single individual as executor and such individual and
a nephew of the testator as trustees, and devised and bequeathed the
business to the trustees with power in them to continue it for such a
period or term of years as might to them seem wise in order to dispose
of it to the best advantage by sale or mortgage, and while conducting
the business as trustees to pay one half of the net amount of profits to

the widow and one half to the son; authorized and empowered the executor to carry on the business for a period, not to exceed twelve months, during which the nephew was given a right to elect to purchase it for $50,000 subject to certain debts; and provided that, if the nephew elected to purchase the business, the trustees should convey it to him on the terms stated. By succeeding decrees the Probate Court authorized the executor to continue the business for a year. Just previous to the expiration of the year, the nephew elected not to purchase the business and declined to serve as a trustee. No trustee ever was appointed. A petition by the executor for leave to sell the business at private sale, presented after the expiration of the year during which he had been authorized to continue the business by decrees of court, was allowed but, owing to delay caused by opposition on the part of the widow, the proposed purchaser declined to carry out the sale. A subsequent petition was allowed, a sale was made and an account of the executor was allowed which included items of expense and for services in connection with the carrying on of the business after the year authorized by the court's decree. It was agreed that the business could be disposed of to advantage only as a going concern; and the judge found that the executor acted at all times in good faith and that all his transactions were fair and open. The widow for herself and her minor son appealed from the allowance of the account. *Held,* that

(1) The executor could not be held as a matter of law to have conducted the business in the double capacity of executor and trustee;

(2) The case fell within the general rule that an executor who is also a trustee under a will cannot be considered as acting under the power given by provisions as to the trust until he has settled his accounts as executor in the Probate Court;

(3) In the circumstances the executor rightly could be found to have acted not improperly and his account properly was allowed.

PETITION, filed in the Probate Court for the county of Suffolk on November 14, 1929, for the allowance of the second account of the executor of the will of Frederick H. Greene, late of Boston.

The account was referred to an auditor, and afterwards was heard by *Prest*, J. Material facts found by the auditor and by the judge are stated in the opinion. A decree was entered allowing the account. The widow, individually and as guardian for a minor son of the testator, appealed.

*H. P. L. Partridge*, for the respondents.

*W. B. Grant*, (*W. F. Mooers* with him,) for the petitioner.

PIERCE, J. This is an appeal by the widow, personally and as guardian of her minor son, from a decree of the Probate Court on April 28, 1930, allowing the second ac-

count of the executor of the will of Frederick H. Greene, late of Boston in the county of Suffolk.

From the report of the auditor and the voluntary report of material facts found by the judge, it appears that Frederick H. Greene, who for many years had conducted a business of building and repairing wagons and truck bodies on encumbered real estate in Roxbury and Charlestown, Massachusetts, died on March 11, 1926, leaving a widow, Margaret L. Greene, and a son, Frederick H. Greene, Jr. By his will he appointed William F. Mooers executor, and trustee with the testator's nephew James Russell Greene. Mooers qualified as executor on April 1, 1926, but neither he nor James Russell Greene ever qualified as trustee. Meanwhile, on March 12, 1926, Mooers was appointed special administrator to effectuate that paragraph of the will which reads: " In order to keep my business intact so far as possible, I request my executor, immediately after my death, to apply for special administration so that he may continue the business until the allowance of this my will and the expiration of the time of appeal therefrom." The widow assented to the petition for special administration.

The business property consisted of real estate, machinery, furniture and fixtures, stock on hand and in process, cash on hand and in the bank, and accounts receivable. In addition a branch of the business was conducted on leased premises on Rutherford Avenue, Charlestown, Massachusetts. As appurtenant to the business as a going concern there was the item of good will which was not included as a separate item in the inventory of the estate. At the time of the death of the testator there were three mortgages on the entire plant including real and personal property and equipment, totalling $50,000.

The testator gave, devised and bequeathed the business in which he was engaged at the time of his death, meaning thereby all the property, real, personal, or mixed which is used in the business, together with the good will thereof and subject to business debts and encumbrances upon the property, to his nephew James Russell Greene and to Wil-

liam F. Mooers, in trust, to continue the business for such a period or term of years as may to them seem wise in order to dispose of it to the best advantage by sale or mortgage, and while conducting the business as trustees to pay one half of the net amount of profits to the widow and son respectively. The will further provided that " If it should be found necessary for my said trustees to continue the business for a period so long as five years, I direct them to pay at the end of five years to the following persons the sums set opposite their names." A list of persons and amounts followed. The will also contained this provision: " 3–A. If at any time within one year from the date of my death, my nephew, James Russell Greene should desire to purchase my business as described in paragraph (B) for the sum of fifty thousand dollars ($50,000) . . . [he] shall resign as trustee and my wife, Margaret L. Greene, shall be appointed in his stead co-trustee with William F. Mooers." The will then authorized and empowered the trustees to enter into an agreement for such sale and the payments therefor, and further provided that in the event of the purchase of the business by the nephew he " shall in addition to the purchase price take upon himself all the obligations named in paragraphs (F) and (G) and in either case the five year term shall begin from the date of my death. And if at the end of the five year period there is left unpaid any of the sums by reason of death or discontinuance in employment, this amount shall be paid one half to my wife and one half to my son." The will contains the further provision: " Pending the decision of my nephew, James Russell Greene, as to whether or not he will purchase the business, I hereby authorize and empower my said executor to carry on during such period as he shall deem wise, not however, to exceed 12 months from the date of his official appointment, the trade or business carried on by me and for that purpose to retain and employ therein the persons which shall at my death be therein employed and generally to act in all matters relating to the said business as if he were beneficially entitled thereto. . . .

This paragraph is not intended as a direction to my said executor to carry on my said business, but simply to authorize and empower him to do so, if in his judgment it seems wise, rather than to close it out immediately."

Upon petition, and after due hearings thereon, no person objecting thereto, the executor was authorized by the Probate Court 'to continue the business of the testator until February 5, 1927; and, on a similar petition, objection being made thereto, he was authorized to carry on said business until April 1, 1927. He conducted the business in the manner in which it had been previously conducted by the testator, and there was evidence that no new money was invested in the business but that the business was transacted upon the executor's personal credit. The year in which Greene had the right to purchase expired March 12, 1927. On March 2, 1927, through his attorney he wrote the executor, in substance, that he had definitely abandoned all thought of purchasing the business; that " he . . . [did] not intend at . . . [that] time to make any proposition for the purchase of the business. And . . . [had] decided that in event a petition for trusteeship . . . [was] presented he . . . [would] decline to accept the appointment."

On March 17, 1927, the executor, having no definite offer, petitioned the Probate Court for license to sell the property at public auction. This petition was opposed by Mrs. Greene. It was agreed at the hearing on this petition that the business could be disposed of to advantage only as a going concern. On April 7, 1927, the judge declined to allow the petition and instructed the executor to see what he could do in the way of procuring an offer for the business at private sale. The executor had, however, been negotiating with several persons who showed some interest to purchase the business at from $50,000 to $55,000 including the mortgages totalling $50,000, and, acting on the judge's advice, he secured an offer of $72,000, that is $22,000 above the mortgages. On May 13, 1927, he presented a petition to sell for $72,000 at private sale. This petition was opposed by Mrs. Greene and because

of the delay incident to her opposition the prospective purchaser withdrew his offer. The petition among other things recited: "This offer of $72,000 is for the real property together with all of the personal assets· of the business including accounts receivable and goodwill. The reason for selling in this manner is that the property has for many years been used as a plant for the building of wagons and truck bodies; and the real property and personal property are so connected as to make the value of the personal property practically that of junk if sep-·arated from the real property and ten months of diligent endeavor on the part of the executor by himself and through brokers has failed to produce a purchaser for the real property alone." This petition was heard on July 6, 1927.

The offer of the purchaser stated "that in the meantime the executor may continue the business as it was then being conducted for the purchaser's benefit. Before this hearing nine appearances by attorneys representing fifteen different creditors holding a large majority in amount of the indebtedness of the estate had entered their appearances, and at the hearing on July 6, 1927, these attorneys were present in court and several of them took ·part in the hearing. The petition was allowed and a decree entered authorizing the sale. The court stated at the end of the hearing that on all the evidence it would be a fatal thing not to keep the business going even if the court could not authorize the executor to carry on the business for more than one year from the date of his appointment. At that hearing and as a result of the hearing it was understood by everybody in open court including the creditors and Mrs. Greene, who was represented by counsel, that the executor was to continue to conduct the business as he had before."

The executor continued to conduct the business and on or about January 1, 1928, secured an offer of $70,000, or $20,000 above the mortgages. This offer was reduced to writing and on January 28 the executor filed a petition for license to sell in accordance with the offer, attaching

a copy thereof to his petition. A citation issued thereon which was returnable February 16, 1928. The offer provided that " the executor may continue such business and use the materials therefor but shall keep materials and supplies on hand for delivery to the purchaser in sub-. stantial amounts and kinds now on hand." At the hearing on this petition it was allowed and the decree of July 7, 1927, authorizing the sale was revoked. The sale was made on March 1, 1928, for the sum of $70,000 including the mortgages, and up to that date the executor had conducted the business.

On April 15, 1927, Mrs. Greene by her attorney wrote a letter to the executor which reads: " On behalf of Mrs. Greene, I beg to notify you that we object to the payment of any creditors, either of the estate or of yourself as Executor, who have not thus brought suit against you, as all such debts are now outlawed, and are not proper liabilities of the estate. Mrs. Greene also considers that you are now continuing the business without authority, and are personally liable for such transaction. You have no right to pay for any liabilities incurred by you in this conduct of the business since April 1, 1927, out of the assets of the estate, or out of the proceeds of any of its property, and we shall hold you personally therefor and the surety on your bond, for any such expenditures."

The items in schedule B of the second account, to which objection is made, relate to the expense of operating the business, and amount in round figures to $130,208; of this amount at least $100,000 was expense incurred during the time that elapsed between April 1, 1927, and March 1, 1928. The executor's claim of $7,589.17 is objected to on the ground that it includes services rendered by him in operating the business after April 1, 1927. The charge of the executor for services was credited with an offsetting item in schedule A of $1,173.52 which represents money which the executor returned or put into the business. He was also allowed the sum of $2,190 as a balance due him for services rendered between April 1, 1926, and April 1, 1927. The amount therefore actually claimed for

services and found not unreasonable or excessive by the auditor and by the judge was $4,225.65. The payment to auditors which was objected to on the ground that it was a payment by the executor for services rendered after April 1, 1927, while he was conducting the business and as a part of the expense of the business after that date, is not specifically discussed by the appellant in her brief. At the hearing before the judge on the auditor's report counsel for Mrs. Greene expressly stated in answer to the question of the judge that there was no claim made that the business had been conducted at a loss during the second year while the executor was carrying on the business without license from the court.

To the contention of Mrs. Greene that the executor improperly added to the running of the business the amount of rent received from the building on Rutherford Avenue, Charlestown, which the testator held under a lease of the entire building, a part of which was occupied as a branch of the business conducted at Southampton Street, Roxbury, the Probate Court found that the lease of the building was taken by the testator in order to reduce the amount of rental he would have to pay for the portion of the premises used in the business, and when the property was sold on March 1, 1928, this branch was still being conducted by the executor as a part of the business; that this lease was not included as a separate item in the inventory of the estate; and he found as matter of law that the amount of rent received from the subtenants was properly and fairly chargeable against the business.

" Under the will the contestant received a devise of the residence on Monadnock Street inventoried at $10,000, on which there was a mortgage of $7,000. The special administrator paid the contestant the sum of $150 out of the proceeds of the business. On July 20, 1926, the court allowed the contestant as an advancement the sum of $1,436.13; on July 27, 1926, the court gave her as a widow's allowance the sum of $1,450; on November 22, 1926, the court allowed another advancement to her of

$1,500. There was also paid to her by the executor special sums amounting to $290 during the second year of conducting the business. All of these sums were paid by the executor from the earnings of the business. And the contestant knew this." The judge of probate further found that the accountant acted at all times in good faith and that all his transactions were fair and open. He stated that he accepted the auditor's report and on all the evidence allowed all three accounts.

Four questions in connection with the objections to the allowance of the second account were formulated by the auditor and considered by the Probate Court in the allowance of the account. They are as follows: (1) "Was Mr. Mooers after April 1, 1927, as executor under the terms of the will and under the circumstances which then existed, warranted to continue the business as he did?" (2) "Was Mr. Mooers after April 1, 1927, conducting the business as executor or as trustee although he had received no appointment from the Probate Court to act as trustee?" (3) "If Mr. Mooers was conducting the business after April 1, 1927, in the capacity of trustee, was he authorized by the terms of the will or otherwise to act in that capacity alone or should there have been two trustees?" (4) "Mr. Mooers having been designated in the will, both as executor and as one of two trustees, and said trustees having authority under the will to carry on the business for an indefinite period, are the items in the account, to which objection is made, to be disallowed to Mr. Mooers because he failed to secure an appointment from this court to act as trustee under the will?" These four questions when consolidated are stated by the executor as really one question, namely, "whether after the expiration of one year from his appointment . . . [Mooers] was justified in continuing the business as executor and if not as executor, then was he in the capacity of trustee and chargeable for any losses which might have occurred, or in view of the fact that he was named as both executor and trustee without giving surety on his bond, was his conduct of the business war-

ranted by the provisions of the testator's will which devised and bequeathed all the business property to him and James Russell Greene to be held in trust and directing that the business should be continued by them? "

Upon the facts above stated the executor, who with another under the will of the testator was given as trustee the business of the testator upon the termination of the administration of the estate, could not in law be held to have conducted that business in the double capacity of executor and trustee from the fact that he was not required either as executor or as trustee to give an official bond with surety or sureties or because he has shown by any authoritative and notorious act that he has elected to act in the capacity of trustee. *Newcomb* v. *Williams,* 9 Met. 525. *Coates* v. *Lunt,* 213 Mass. 401. *Massachusetts Institute of Technology* v. *Attorney General,* 235 Mass. 288, 294. Indeed, until the declination of the trust by his cotrustee, he could not alone execute the power to carry on the business which was given to him and another as cotrustees, and after such refusal to act it is at least doubtful whether the power given does not rest upon the personal confidence which the testator had in his "friend" William F. Mooers and in his "wife," Margaret L. Greene. If the power given so rests it is plain the exercise of it was confined in the individuals to whom it was given and could not be exercised by one of them or by the survivor of them. *Tainter* v. *Clark,* 13 Met. 220. *Treadwell* v. *Cordis,* 5 Gray, 341, 360. *Sells* v. *Delgado,* 186 Mass. 25, 27.

Here there can be no estoppel because the minor son had no guardian from April, 1927, down to and including the time of the sale of the business — March 1, 1928.

The case falls within the general rule that an executor who is also a trustee under a will cannot be considered as acting under the power given by the trust until he has settled his account as executor in the Probate Court. *Crocker* v. *Dillon,* 133 Mass. 91, 98. *Hines* v. *Levers & Sargent Co.* 226 Mass. 214, 215, 216. *Lannin* v. *Buckley,* 256 Mass. 78. The executor was not authorized and

could not be authorized by the Probate Court to carry on the business for the benefit of the estate after one year from the date of his appointment on April 1, 1926. G. L. c. 195, § 7. But under the provisions of the will, without the formal authority of the Probate Court, the executor had the power, and it was his duty consistently with the proper administration of the estate, to continue the business until James Russell Greene within one year from March 11, 1926, the date of the death of the testator, should express to the executor his desire or declination to purchase the business for the sum of $50,000 and to assume certain obligations. It was the manifest intention of the testator that not later than twelve months from the date of his death the executor should bring to a close his administration of the estate if he deemed it wise to do so; and if he did not close out the business by sale to Greene, to transfer the business to the trustees.

At the end of twelve months from the testator's death there were many debts of the testator payable before his death, and there were three mortgages on the real estate and personal property amounting to $50,000. These debts on the refusal of Greene on March 2, 1927, to purchase the business for $50,000 and to assume the obligations described in paragraphs F and G of the will were required to be paid by the executor, under the provisions of the will, as a part of the testator's " just debts " before the trust could become legally operative. It is to be noted that the executor filed a petition on March 17, 1927, to sell the business, that the petition was opposed and disallowed, and that it was agreed at the hearing on this petition that the business could be disposed of to advantage only as a going concern. It is obvious that it was the duty of the executor, after the refusal of Greene to purchase, to administer the estate to its best advantage, and that he should not be charged with the expense of conducting the business and disallowed his charges for services rendered after April 1, 1927, if such items were properly paid out by him in the operation of the business and were not unreasonable. Here the executor continued the business from April 1, 1927, to March 1, 1928,

when it was sold as a going concern at a price which was a substantial gain to the estate after deducting all proper and reasonable charges for the conducting of the business and for services rendered by the executor in its management. In the circumstances here disclosed we think the executor rightly could be found to have acted not improperly and that his account should be allowed.

*Decree affirmed.*