THE FIRST NATIONAL BANK OF BOSTON, trustee, *vs.* TRUESDALE HOSPITAL & others.

SAME *vs.* TRUESDALE HOSPITAL.

SAME *vs.* TRUSTEES OF TUFTS COLLEGE.

SAME *vs.* UNION HOSPITAL OF FALL RIVER.

SAME *vs.* FALL RIVER DISTRICT NURSING ASSOCIATION & another.

TRUESDALE HOSPITAL *vs.* THE FIRST NATIONAL BANK OF BOSTON, trustee, & others.

Bristol.    May 22, 1934. — September 21, 1934.

Present: CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Trust,* When title of trustee vests, Investments. *Executor and Administrator.*

Citation by LUMMUS, J., of decisions illustrating the rule that, when the same person is both executor and a legatee who is to take in trust, he does not cease to hold as executor nor take as legatee until he has qualified as trustee and has shown by some authoritative and notorious act that he has elected to take title in the new capacity.

A testator, who some years before his death had delivered certain shares of the capital stock of a corporation to a bank to hold subject to his order, by his will nominated the bank to be trustee thereunder and directed that at his death such shares should "become a permanent trust fund to provide for" certain named "charities and be set aside by said Bank and divided up in the following separate trusts . . . One-quarter of the total, but in no instance to be less than $500,000, to be put aside and invested, the income from same to be paid semi-annually to" a certain hospital. The remaining shares were to be divided among three other trust funds for other charities. The bank was appointed one of three executors of the will and trustee thereunder. About six months after the testator's death and nearly five months after the allowance of the will, the executors transferred the shares to the bank as trustee under the will and it appropriated to a trust for the benefit of the hospital shares of the then value of about $24 more than $500,000. Later, when the value of the shares thus allocated was less than $500,000, the hospital contended that such action by the executors and the bank did not establish the trust as of the date of the transfer to it as trustee, and sought a sale of the shares at the depleted value and the establishment of a trust fund from the proceeds in the sum of $500,000. The executors had not filed any account. *Held,* that

(1) The number of shares which the hospital was entitled to have held for it in order to make up $500,000 in value depended upon the value of the stock at the time the trust should in fact be set up;

(2) In the circumstances, the trust fund for the benefit of the hospital was completely set up by the transfer of shares from the executors to the trustee;

(3) The mere fact, that an account of the executors showing the transfer to the trustee had not been allowed, did not require a ruling of law that the trust had not been established by such transfer and at the time thereof;

(4) The mere fact, that the trustee omitted for many months to inform the hospital that the transfer had been made and the trust established, did not require a ruling that it had not been established.

The hospital contended that, even if such trust fund for its benefit was effectively set up by the transfer to the trustee, which was in May, 1931, the trustee was liable on its account, filed in February, 1933, for holding the shares on a falling market. It appeared that the corporation in question was one in which the testator had made his fortune and that the market value of its stock had declined less than that of most other stocks since May, 1931. *Held,* that

(1) The intention of the testator as expressed in his will was that the shares should be retained by the trustee, so that the corpus of the trust primarily might consist wholly of such shares;

(2) Unless there should be reason to fear for the safety of the investment, the trustee in the circumstances had the right to retain the trust fund in the form in which it was received;

(3) Having that right, there was nothing to show that the reten-

tion of the shares on a generally falling market was a breach of duty, under the Massachusetts rule.

It further appeared on the record before this court in the matter above described that, in the circumstances, the pendency of litigation over the creation and composition of the trust fund further excused failure of the trustee to sell the shares on a falling market.

PETITION, filed in the Probate Court for the county of Bristol on January 26, 1933, by the trustee under article "Seventhly" of the will of Earle P. Charlton, late of Fall River, for instructions; also

FOUR PETITIONS, filed in the same court on February 25, 1933, by the same trustee, for allowance of its first accounts as trustee under said article for Truesdale Hospital; Trustees of Tufts College; Union Hospital of Fall River; The Johns Hopkins Hospital and Harriet Lane Home for Invalid Children of Baltimore City, and Fall River District Nursing Association, respectively; also, a

PETITION, filed in the same court on May 17, 1933, by Truesdale Hospital for appointment of a separate trustee as to a fund to be held for the hospital under said will, and that the trustee be ordered to sell "sufficient shares of the common stock of F. W. Woolworth Company to realize not less than $500,000, and to pay the proceeds over to the Trustee" so appointed.

The petitions were heard together by *Hitch*, J., the evidence being ordered reported.

It appeared that on December 19, 1925, Earle P. Charlton left with a vice-president of The First National Bank of Boston ten thousand shares of the capital stock of F. W. Woolworth Co. with the request that they be held subject to his order, stating that he had made a provision in his will relating to these shares and that he wished them kept separate. Later by corporate reorganizations these ten thousand shares were increased to twenty-five thousand. Charlton died on November 20, 1930, and his will was proved and executors appointed on January 2, 1931. On February 9, 1931, The First National Bank of Boston was duly appointed and qualified as trustee under article "Seventhly" of the will, described in the opinion. On

April 21, 1931, the trustee petitioned for instructions relating to the same fund. This petition afterwards by amendment became a petition by the executors of the will for instructions.

On May 22, 1931, the executors, being satisfied that the estate was solvent, and having paid substantially all legacies, transferred the twenty-five thousand shares of Woolworth stock to The First National Bank of Boston as trustee under article "Seventhly," in whose name new certificates of stock were issued, as stated in the opinion. In a statement of facts agreed to by all parties in the petition by the executors for instructions, including the Truesdale Hospital, it was stipulated: "That on February 9, 1931, the said The First National Bank of Boston qualified as trustee under Article Seventhly of said will and on May 22, 1931, the executors of said will assigned and transferred said twenty-five thousand shares to said The First National Bank of Boston, trustee under Article Seventhly." That petition was finally determined by this court on November 15, 1932, and the decision is reported in *First National Bank of Boston* v. *Union Hospital of Fall River*, 281 Mass. 64.

The bank as trustee paid the income on the $500,000 value of Woolworth stock constituting the corpus of the Truesdale Hospital trust from February 9, 1931, to February 8, 1933, to the Truesdale Hospital.

The F. W. Woolworth Co. declared a dividend on November 10, 1930, to stockholders of record of that date, payable on December 1, 1930. Charlton having died on November 20, 1930, a dividend amounting to $15,000 was received by the executors representing the dividend on the twenty-five thousand shares constituting the corpus of the trust under article "Seventhly." They treated this dividend as an asset of the estate and not as a portion of the corpus of the trust under article "Seventhly." The account of the bank as trustee discloses no receipt of this dividend.

After hearing, the judge of probate ruled and found that The First National Bank of Boston was rightly appointed as sole trustee under article "Seventhly"; that one appoint-

ment of the bank as trustee under article "Seventhly" was proper and four separate appointments were not necessary; that the trust became effective when the bank as trustee received the corpus of the trust on May 22, 1931; that Truesdale Hospital received income payments from the bank as trustee without objection and made no objection to the bank acting as trustee until the present controversy arose; that the division of stock among the several beneficiaries on the basis of its value on May 22, 1931, was correct; and he found as a fact and ruled as a matter of law that the bank as trustee was not liable for retaining the Woolworth stock in the trust; and ruled that the dividend upon the Woolworth shares declared on November 10, 1930, payable on December 1, 1930, to stockholders of record on November 10, 1930, belonged to the executors as part of the general estate and not to the trustees.

On September 15, 1933, decrees were entered in the Probate Court allowing all the accounts of The First National Bank of Boston as trustee, dismissing the petition of Truesdale Hospital for the appointment of a separate trustee under article "Seventhly" and dismissing without prejudice the petition for instructions of The First National Bank of Boston as trustee.

Truesdale Hospital appealed from all the decrees.

At the argument of its appeals in this court, counsel for Truesdale Hospital stated: "We do not press our appeal from the decree dismissing the trustee's petition for instructions without prejudice. Upon the appeal from the decree dismissing the separate petition of Truesdale Hospital we do not press the contention that after a proper division of the trust fund a separate appointment of a trustee for the benefit of Truesdale Hospital was required, and we press our appeal only in so far as the dismissal of the petition constituted an adjudication that a new and proper set-up of the trust was not required, or that, if the trust was properly set up, the trustee was justified in its failure to reinvest and diversify." No argument was presented respecting the payment to the executors of the dividend declared on November 10 and payable on December 1, 1930.

*J. G. Palfrey,* (*B. Morton & H. Morton* with him,) for Truesdale Hospital.

*R. P. Borden,* for Union Hospital of Fall River and another.

*E. C. Jenney,* (*S. Robinson* with him,) for Trustees of Tufts College and others.

*C. B. Rugg,* (*C. J. Gilbert & W. F. Farr* with him,) for The First National Bank of Boston, trustee.

LUMMUS, J.    Article Seventhly of the will of Earle P. Charlton, dated January 2, 1926, declared that the testator had deposited with The First National Bank of Boston a large number of shares of common stock of F. W. Woolworth Co., and directed that at the death of the testator "it shall become a permanent trust fund to provide for the following charities and be set aside by said Bank and divided up in the following separate trusts, as follows — One-quarter of the total, but in no instance to be less than Five hundred thousand dollars ($500,000), to be put aside and invested, the income from same to be paid semiannually to the Truesdale Hospital of Fall River, Massachusetts." The remaining three quarters, or excess above $500,000, as the case might be, was divided into three other trust funds, the income of the first to go to Tufts College, of the second to go to the Union Hospital of Fall River, Massachusetts, and of the third to go to The Johns Hopkins Hospital of Baltimore, Maryland, and the Fall River District Nursing Association in equal shares.

The testator died on November 20, 1930, the will was proved and allowed on January 2, 1931, and The First National Bank of Boston was appointed trustee under said Article Seventhly on February 9, 1931. By the decision of this court in *First National Bank of Boston* v. *Union Hospital of Fall River,* 281 Mass. 64, it was established that the corpus of the fund under said article, before division, consisted of twenty-five thousand shares. On May 22, 1931, the executors, consisting of said bank and two individuals, indorsed said shares to said bank, which appropriated to the trust for the benefit of Truesdale Hospital seven thousand four hundred seventy-seven shares. These, at the market value on that day of $66 7/8 a share,

made $500,024.37, a few dollars more than the minimum of $500,000 which Truesdale Hospital was entitled to have held in trust. On May 28, 1931, after transfer of the shares on the corporate books, said bank obtained certificates for seven thousand four hundred seventy-seven shares in its name as trustee for Truesdale Hospital. One third of one share, however, is deemed to belong to the trusts for other beneficiaries, in order to reduce the trust for the Truesdale Hospital to $500,000.

This method of division is satisfactory to the beneficiaries under Article Seventhly, other than Truesdale Hospital. Truesdale Hospital, however, contends that a division was never lawfully made but remains to be made in the future. At the present time the low value of the shares, as compared with their value on May 22, 1931, would require the appropriation of many more shares to the trust fund for Truesdale Hospital in order to make up the $500,000 in value to which it is entitled, and the shares available for other trust funds under Article Seventhly would be correspondingly fewer.

The number of shares which Truesdale Hospital was entitled to have held for it in order to make up $500,000 in value, depended upon the value of shares at the time the trust should in fact be set up. *Fisk* v. *Cushman,* 6 Cush. 20, 28. *Boston Safe Deposit & Trust Co.* v. *Reed,* 229 Mass. 267, 272. *In re Brown,* 112 N. J. Eq. 499. If that trust was effectively set up on May 22, 1931, on the basis of the value of shares on that day, Truesdale Hospital has no right to have the trust reëstablished according to the value of shares at any other time. If that trust was not effectively set up on that day, but still remains to be set up, it is impossible at this time to foresee how many shares will be necessary in order to make up the minimum of $500,000 in value.

Truesdale Hospital contends that the establishment of the trust for it on May 22, 1931, was incomplete, tentative and provisional only. If that be so, what was done on that day served no purpose and was an elaborate and empty form. That was hardly the intention of the bank, though

some of its officers described the establishment as "tentative." True, the number of shares for division had not then been adjudicated by our earlier decision. But the division was based on principles subsequently decided to be correct. No party, in the earlier case before us, contended that there were fewer than twenty-five thousand shares to be divided. The bank did think it possible that some party might contend that only ten thousand shares composed the corpus to be divided. If such a contention had been made and sustained, the trust funds set up on May 22, 1931, for beneficiaries other than Truesdale Hospital, might have had to be reduced. See *Stevens* v. *Goodell*, 3 Met. 34; *Marvel* v. *Babbitt*, 143 Mass. 226. But the fund for Truesdale Hospital would still have been entitled to its seven thousand four hundred seventy-six and two thirds shares of the approximate value of $500,000. Any possibility of a decision that there were no shares to be divided was deemed very remote. The fact that the set-up of a trust fund may conceivably be affected by an unexpected turn of events does not make it ineffective. *Henry* v. *United States*, 251 U. S. 393. *Simpson* v. *United States*, 252 U. S. 547. *Cochran* v. *United States*, 254 U. S. 387, 392.

Truesdale Hospital contends, moreover, that whatever the intention of the trustee may have been, the set-up of the trust fund on May 22, 1931, was ineffective as matter of law. It relies on the rule that when the same person is both executor and a legatee, whether as legatee he takes in trust or free from trust, he does not cease to hold as executor nor take as legatee, until he has qualified as trustee, if his legacy is in trust, (*Newcomb* v. *Williams*, 9 Met. 525, 534, 535; *White* v. *Ditson*, 140 Mass. 351, 354; *Collins* v. *Collins*, 140 Mass. 502, 507; *Little* v. *Little*, 161 Mass. 188, 202; *Coates* v. *Lunt*, 213 Mass. 401,) and has shown by some authoritative and notorious act that he has elected to take title as legatee. *Newcomb* v. *Williams*, 9 Met. 525, 534. *Miller* v. *Congdon*, 14 Gray, 114, 117. *Hobbs* v. *Cunningham*, 273 Mass. 529, 534. *Sherman* v. *Jerome*, 120 U. S. 319. The latter requirement has so hardened that ordinarily nothing short of a paying over

of the legacy, shown by an account duly allowed by the Probate Court (*Knowles* v. *Perkins*, 274 Mass. 27), will suffice. *Crocker* v. *Dillon*, 133 Mass. 91, 98, 99. *Welch* v. *Boston*, 211 Mass. 178, 181–185. *Williams* v. *Acton*, 219 Mass. 520, 524. *Hines* v. *Levers & Sargent Co.* 226 Mass. 214, 215. *Mooers* v. *Greene*, 274 Mass. 243, 252. *Union Market National Bank of Watertown* v. *Gardiner*, 276 Mass. 490, 496. In the present case the executors have filed no account. The first account of the trustee was filed on February 25, 1933, and one of the appeals before us is from the allowance of that account.

This rule has been applied in settling the accounts of executors and trustees, and in actions upon their bonds (*Brigham* v. *Morgan*, 185 Mass. 27, 45, and cases cited; *Lannin* v. *Buckley*, 256 Mass. 78, 81; *Mooers* v. *Greene*, 274 Mass. 243, 252; *Brackett* v. *Fuller*, 279 Mass. 62; compare *Cook* v. *Howe*, 280 Mass. 325); in petitions for retention of assets for creditors, which must be brought before the estate is fully administered (*Downer* v. *Squire*, 186 Mass. 189, 198; *Union Market National Bank of Watertown* v. *Gardiner*, 276 Mass. 490, 495, 496); in a case where the question was whether an automobile had passed from an executor, in whose hands it was insured, to himself as legatee (*Hobbs* v. *Cunningham*, 273 Mass. 529); in a case where a creditor of the sole legatee sought unsuccessfully to trustee royalties payable to her as executrix (*S. S. Pierce Co.* v. *Fiske*, 237 Mass. 39); and in cases in which executors contended that personalty should have been taxed locally to them as trustees. *Welch* v. *Boston*, 211 Mass. 178. *Sears* v. *Nahant*, 221 Mass. 435. *Sears* v. *Nahant*, 221 Mass. 437, 439.

In *Crocker* v. *Dillon*, 133 Mass. 91, 98, and *Mooers* v. *Greene*, 274 Mass. 243, one of the trustees was the executor, while in *Newcomb* v. *Williams*, 9 Met. 525, as in the present case, one of the executors was the trustee. We need not consider whether such a want of complete identity of those filling the two offices takes the case out of the rule, for we think that the rule itself has no application to the question under discussion. If the number of shares to which the

trust for Truesdale Hospital was entitled could not be determined until an account showing a distribution to it of the correct number of shares should be allowed, it is hard to see how the trust could ever be set up unless all parties should consent to a decree allowing the account on the very day of the distribution. The lapse of even a few days between the distribution and the decree would give time for much change in the market value of shares.

In *Massachusetts Institute of Technology* v. *Attorney General*, 235 Mass. 288, 293, 294, the rule requiring the allowance of an account showing a distribution by the executors to themselves as trustees, was not applied where the question concerned merely the time of setting up the trust. Although, as was pointed out in *Miller* v. *Congdon*, 14 Gray, 114, 118, the exact point was not argued in *Hubbard* v. *Lloyd*, 6 Cush. 522, the opinion by Shaw, C.J., in the latter case held that the beneficiary of a trust fund of $50,000, actually set apart, was not entitled to have the setting up of the fund remain provisional during the settlement of the estate so that any possible diminution in value of the fund might be made good. In the present case, the question is not whether title passed to the trustee, nor whether the executors were relieved of liability as such for the safety of the shares appropriated to the trust. It is simply whether enough was done to determine the number of shares to which the trust was entitled. We think that what was done on May 22, 1931, was not a mere "mental determination" (*Miller* v. *Congdon*, 14 Gray, 114, 117; *Collins* v. *Collins*, 140 Mass. 502, 507; *Sheffield* v. *Parker*, 158 Mass. 330, 333; *Sherman* v. *Jerome*, 120 U. S. 319), but was sufficient for the present purpose, notwithstanding the unfortunate and needless omission of the trustee for many months to inform Truesdale Hospital of it.

The remaining contention of Truesdale Hospital is, that if the number of shares be held to have been fixed on May 22, 1931, the trustee The First National Bank of Boston is liable for holding the shares since that time on a falling market.

In the absence of authority or direction in the will to

retain investments made by the testator, it is ordinarily prudent for a trustee to diversify his investments, following the proverbial injunction not to put all one's eggs in one basket.   *Kimball* v. *Whitney,* 233 Mass. 321, 331, 332. *North Adams National Bank* v. *Curtiss,* 278 Mass. 471, 482. Truesdale Hospital complains that the fund was not diversified.   But diversification of investments is intended as a protection against loss of the whole or a large part of a fund from the collapse of one investment while other available securities remain sound.   It is common knowledge that since May 22, 1931, substantially all securities proper for trust investment have fallen in value, and the evidence shows that the common stock of F. W. Woolworth Co. has fallen less than most other investment stocks.   It is not shown that the trust fund suffered by the want of diversification.

Furthermore, the intent of the testator was that the shares of the corporation in which he had made his fortune might be retained by the trustee, so that the corpus of the trust might consist wholly of such shares.   The stock, the will declared, was to "become a permanent trust fund . . . and be . . . divided up" among the trusts for the different beneficiaries.   It was stock, not money, that was to be "put aside and invested" for Truesdale Hospital.   It may be that the word "invested" implies a right to change investments, though that becomes unimportant in view of the power to do so under G. L. (Ter. Ed.) c. 203, § 19, which the will does not negative.   Nevertheless the trust fund was to consist primarily of common stock of F. W. Woolworth Co. to the value of $500,000.   Unless there should be reason to fear for the safety of the investment, the trustee under this will had the right to retain the trust fund in the form in which it was received.   *Kinmonth* v. *Brigham,* 5 Allen 270, 277.   *Old Colony Trust Co.* v. *Shaw,* 261 Mass. 158, 166, *et seq.   Anderson* v. *Bean,* 272 Mass. 432.   *North Adams National Bank* v. *Curtiss,* 278 Mass. 471, 481.   *Ward* v. *Kitchen,* 3 Stew. (N. J.) 31, 36.   *Richardson* v. *Knight,* 69 Maine, 285.   *Taylor's Estate,* 277 Penn. St. 518; 37 Am. L. R. 553, and note page 571.

*Matter of Clark,* 257 N. Y. 132; 77 Am. L. R. 499. Perry, Trusts & Trustees (7th ed.), § 465.

Having that right, there is nothing to show that the retention of the shares on a generally falling market was a breach of duty, under the Massachusetts rule stated in *Creed* v. *McAleer,* 275 Mass. 353, 357, and *Roulston* v. *Roulston,* 285 Mass. 489. The trend of a market is notoriously hard to discover except in retrospect. At every level skilled observers are apt to disagree as to its probable course. *Kimball* v. *Whitney,* 233 Mass. 321, 334. *Matter of Clark,* 257 N. Y. 132, 139. *People's National Bank & Trust Co. of Pemberton* v. *Bichler,* 115 N. J. Eq. 617. Moreover, the pendency of litigation over the creation and composition of the trust fund tends to excuse inaction on the part of the trustee. *Dimmock* v. *Bixby,* 20 Pick. 368, 374, 375. *Creed* v. *McAleer,* 275 Mass. 353, 358.

What has been said covers all the contentions now urged. The six decrees from which appeals were taken are affirmed. The matter of costs and expenses is to be in the discretion of the Probate Court. *Boynton* v. *Tarbell,* 272 Mass. 142.

*Ordered accordingly.*