BOSTON SAFE DEPOSIT AND TRUST COMPANY *vs.* JAMES H.
WALL & others.

Worcester.    September 23, 1925. — January 13, 1926.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Trust,* Trustee's accounts.    *Broker,* Commission.

Upon the evidence at the hearing of an account filed by a trust company
as a trustee under a will which authorized the trustee to sell real estate
at such times and in such way or manner at public or private sale and
for such prices as it in the exercise of its best judgment should deem wise
and prudent and most for the interest of those entitled to the estate,
it was *held,* that

(1) The trustee was not required to consult the beneficiaries;

(2) It could have been found that a large expenditure would be
necessary before the income could be substantially increased, and that
upon the facts then known it was the exercise of good judgment on the
part of the trustee and for the benefit of all who were interested in
the estate that a sale should be made and the larger expenditure not
incurred.

Evidence at the hearing above described tended to show that a real estate
broker first found a customer for the real estate in question and then
came to the trustee without being sent for and asked one of its officials
if the trustee would be willing to dispose of the property and told the
official with whom he talked the name of his customer and the price he
could get for the property; that the trustee wanted a larger price, and
that the broker negotiated therefor and an agreement for sale finally
was reached; that the broker made an arrangement with the trustee as
to his commission; and that the broker negotiated with only the one
customer, did not try to get any other and did not advertise the prop-
erty.    The broker was paid a commission of $5,200, while the regular
rate charged by brokers in the locality where the real estate was would
entitle the broker to a commission of $2,850.    The judge allowed the
item at $5,200.    On an appeal by the beneficiaries under the trust, it
was *held,* that

(1) On all the evidence, it could not be said that the employment by
the trustee of the broker who acted in the transaction was unwarranted
as a matter of law;

(2) As a matter of law, the burden, which was upon the trustee, of
proving that the amount paid the broker was fair and reasonable, was
not sustained;

(3) The evidence did not justify the finding that the trustee was
warranted in paying the broker more than the usual commission;

(4) The item of $5,200 must be reduced to $2,850.

PETITIONS, filed in the Probate Court for the county of Worcester for the allowance of the ninth to the twenty-eighth accounts, inclusive, of the trustee under the will of James H. Wall, late of Worcester.

The petitions were heard by *F. H. Chamberlain*, J. Material evidence is described in the opinion. By order of the judge, there were entered decrees allowing the accounts with some modifications not now material. The respondents appealed.

*W. C. Mellish*, (*A. W. Mitchell* with him,) for the respondents.

*C. M. Rogerson*, for the petitioner.

SANDERSON, J. This is an appeal from a decree of the Probate Court for the county of Worcester allowing accounts, numbered nine to twenty-eight inclusive, of the trustee under the will of James H. Wall. The two items now in controversy relate to a sale of real estate on Main Street, Worcester, in November 1915, for $260,000, and to the payment of $5,200 to one Horowitz who acted as broker in the transaction. In regard to the former item, the contention of the contesting beneficiaries is, that the property was sold at an inopportune time; that the residuary legatees, who had previously been led to believe that a larger amount could be obtained for it, were not consulted; that the trustee did not make a reasonable effort to and did not obtain an adequate price; and that it should be charged for the loss sustained by them as a result of the sale. In regard to the second item, it was contended that no payment should have been made to the broker, and that if it should be decided that he was entitled to a commission, the regular commission of brokers in Worcester should have been paid instead of the sum allowed in the account.

1. The sale was made by the trustee after consulting men in Worcester well informed on real estate values, and receiving their estimates of value varying from $240,000 to $270,000; and after making various investigations in regard to the property and trying to sell it through one broker to the owner of the adjoining lot and offering it to one or more larger buyers of centrally located real estate in Worcester. The sale was made as a result of conferences between the trustees and the broker, who called at its place of business and stated

that he had a customer for the property for whom he first made an offer of $270,000 at the expiration of the leases on the property, with certain other provisions, not now material. Later, after further conferences with the customer, he made an offer of $270,000 subject to a deduction of $10,000 because of the leases, making the purchase price $260,000. Before this offer was accepted, the trustee consulted the president of a Worcester bank who was also largely interested in centrally located Worcester real estate. The sale was authorized to be made upon this offer both by the executive committee and the board of directors of the trust company.

The testimony of certain real estate brokers in Worcester tended to show that more than one broker should be employed or consulted in a transaction of this kind; that a sale should not be confined to the offer of one particular purchaser; and that the year 1915 was not a good time to sell. There was ample evidence upon which the court could have found that the property brought all that it was worth in 1915, and that the trustee exercised sound judgment in selling then, notwithstanding the fact that after 1917 or 1918 there was a substantial rise in real estate values. In the early part of 1913 the trustee communicated with one of the residuary legatees in regard to certain offers that it then had, stating in substance that it had an offer of $275,000 which might be increased to $300,000 and asking their opinion in regard to the advisability of making the sale. In reply, one of these beneficiaries stated that he did not care to assent to a sale. Later, in 1914, the trustee sent to all residuary legatees a statement showing the increase of tax assessments on the property for a series of years, and the diminishing net return on the assessed value, showing a decrease from three and eight-tenths per cent in 1905–6 to two per cent in 1913–1914, with the prospect of a return of one and four tenths per cent in 1914–1915. In the same letter the trustee stated that "It would seem to us that the time has now come when it would be by far the better policy to sell this property, if it can be done at a fair price," and that if the property could be sold for anything like $300,000 and invested in safe securities yielding 4% or better, the life tenants would receive an

income of $12,000 instead of $4,000. Two of these legatees replied stating in substance that the property should be sold as soon as an available customer could be found. The other two did not reply. It appeared that the sale was made without further consultation with them and that they were not informed of it until it was completed.

The power of sale under which the trustee acted, authorized it to sell at such times and in such way or manner at public or private sale and for such prices as it in the exercise of its best judgment should deem wise and prudent and most for the interest of those entitled to the estate. The trustee was not required to consult the beneficiaries. The size of the mortgage taken back in part payment is not now material, the debt which it secured having been paid in full. The buildings on the property were old and did not cover the whole lot. It could have been found that a large expenditure would be necessary before the income could be substantially increased, and that upon the facts then known it was the exercise of good judgment on the part of the trustee and for the benefit of all who were interested in the estate that a sale should be made and the larger expenditure not incurred. When the property was sold the time for distribution of the trust estate had not arrived.

In view of all the testimony this court cannot say that the Probate Court was wrong in reaching its decision which, we must assume, included a finding that the trustee in making the sale acted in good faith and exercised the sound discretion and good judgment of a prudent man dealing with his own permanent investments. *Harvard College* v. *Amory,* 9 Pick. 446. *Dickinson, appellant,* 152 Mass. 184, 187. *Pine* v. *White,* 175 Mass. 585. *Taft* v. *Smith,* 186 Mass. 31. *Kimball* v. *Whitney,* 233 Mass. 321, 331.

2. It could have been found upon the testimony of the broker in the transaction, who was called as a witness by the appellants, that he first found the customer for the property and was then employed by the trust company to sell it and afterwards effected the sale to this customer; that he came to the trustee without being sent for and asked if the trust company would be willing to dispose of the property and told

the official with whom he talked the name of his customer and the price he could get for the property; that the trust company wanted more than the price offered and the witness went back to his customer and negotiated with him for some time to get a larger price; that this customer was the only· one the broker had and he did not try to get any other and did not advertise the property; that he made an arrangement for the commission with the trust company at the time and that he did not fix it by any schedule; that he earned the commission which he received and it was a fair and reasonable compensation for the work he did.   It appeared in evidence that the broker was paid $5,200, and that if the regular rates established in Worcester at the time by the real estate exchange and generally used by brokers in that city for selling this kind of property were applied, the commission on the sale would be $2,850.   The officer of the trust company with whom the arrangement with the broker was made did . not testify.   The witness who was called in behalf of the company stated that it did not put the property in the hands of the broker to sell, but accepted an offer made by him as a broker; and when asked why the trustee should pay him a commission said "You have to pay a broker," and when asked if a broker did not sometimes get a commission from the man buying if he was the broker's customer, replied "It is not customary . . . the seller usually pays a commission, as far as I know."   The same witness testified that the broker's commission was two per cent and that this was a part of the offer; and that he knew how the commission was fixed from other officials of the bank.   The testimony that the amount of the commission was a part of the offer was objected to, but was allowed to remain in the case for the limited purpose of explaining why this witness put the item into the account.   The form in which it there appears is, "Amount paid to Jacob Horowitz, on account of sale of property 5,200."

It is provided in G. L. c. 206, § 16, that a trustee shall be allowed his reasonable expenses incurred in the execution of his trust.   Upon all the evidence we cannot say that the employment by the trustee of the broker who acted in the

transaction was unwarranted. The burden of proving that the amount paid him was fair and reasonable is upon the accountant. *Ashley* v. *Winkley*, 209 Mass. 509, 526. *Graves* v. *Dill*, 159 Mass. 74.

Apart from special contract, a broker would be entitled to receive only the usual commission charged for similar services by other brokers in his community. *Hollis* v. *Weston*, 156 Mass. 357, 359. *Graves* v. *Dill, supra.* Ordinarily a trustee would not, in the exercise of the sound judgment which the performance of his trust requires, be justified in paying more than that commission. The broker in his testimony gave no sufficient reason for charging more than brokers generally received in Worcester at that time. No evidence was offered tending to prove that any request was made of the broker to accept the usual commission or that the trustee was unable to get some other broker to take the property for sale at the regular rate. The letters from the broker to the trustee containing the offers for the property and the votes of the executive committee and of the directors of the trust company make no reference to a broker's employment or commission. All of the evidence which was presented to the Probate Court is before us, and we are to decide the case upon that evidence giving due weight to the decision made by the trial judge after hearing oral testimony. *Cook* v. *Mosher*, 243 Mass. 149, 152. *Weinstein* v. *Miller*, 249 Mass. 516, 520. The property sold was centrally located on the main street of Worcester, and we do not think that its condition or the testimony relating to the unsuccessful efforts of the trustee to sell it or any of the facts disclosed by the record were sufficient to justify the finding that the trustee was warranted in paying the broker more than the usual commission.

It follows that the item of $5,200 charged in schedule B of the amended twenty-eighth account as paid Jacob Horowitz on account of sale of property must be reduced to $2,850, leaving a balance of principal in schedule C of the twenty-eighth account of $222,606.28, and with these modifications the decree allowing the accounts is affirmed.

*So ordered.*