JAMES F. CREED, trustee, *vs.* KATHERINE G. McALEER & others.

Suffolk.    December 5, 1930, January 5, 1931. — April 25, 193/

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Trust,* Trustee's duties as to investment, Accounting by trustee, Compensation. *Capital and Income. Probate Court,* Account, Appeal.

A trustee in making investments is required to conduct himself faithfully and to exercise a sound discretion, observing how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, and considering the probable income as well as the probable safety of the capital involved.

A trustee of an estate which includes corporate stocks is chargeable with loss due to a failure to sell some of them at peak prices only if such failure was an abuse of "the sound discretion and good judgment of a prudent man dealing with his own permanent investments."

A trustee, who, by reason of the pendency of a petition, filed after the death of a life beneficiary, for distribution of corporate stock of the trust in kind, delayed a sale thereof, was *held* to have acted as a reasonable man and not to be chargeable with a loss due to a sudden drop in the market price of such securities while such petition was pending.

Compensation for services by a trustee rendered after the death of a life beneficiary is payable out of capital.

The regular annual or periodically recurring expenses arising in the administration of a productive trust commonly are paid out of the income, while extraordinary and unusual expenses are chargeable against the capital; the costs of litigation generally fall in the latter class.

Upon the hearing of an account presented by the trustee under a will after the death of a life beneficiary, the judge of probate allowed a certain amount of compensation to the trustee, to be paid from the principal of the trust. The judge considered in relation thereto only the trustee's services subsequent to the death of the life beneficiary in all matters relative to the closing up of the trust estate, including services in relation to a petition for distribution in kind, a petition for instructions as to disposition of proceeds of sale of certain land, a petition for determination of the validity of the assignment of one of the remaindermen, the adjudication of the account then before the court, and in litigation as to his first account, in which the contest was by the remaindermen and related to principal and in which the accountant prevailed save as to certain mathematical errors. *Held*, that the allowance was proper.

Upon the same account, the judge in making an allowance from principal for an attorney's charges considered only his services rendered in connection with the litigation as to the trustee's first account, which was heard in this court on appeal, and his services in connection with the closing of the trust estate after the death of the life beneficiary. *Held*, that such allowance was proper.

The services rendered by such trustee and his attorney in the litigation over the first account were not regular or periodically recurring expenses; they were a part of the litigation and properly were allowed by the Probate Court, since they did not appear to be excessive or unreasonable.

The compensation to be allowed a trustee and his attorney is such compensation as shall be adjudged reasonable.

An allowance to a trustee of compensation from the principal for services in bringing a petition for determination of the validity of an assignment by one of the remaindermen should be charged, not against the estate generally, but solely against the distributive share of that remainderman.

Commonly, the assertion of a corporation as to the nature of its corporate action, made in good faith and not obviously wrong or designed as a cover for some ulterior design, is accepted as true.

Although the substance and intent of corporate action taken, as shown by votes, are to be ascertained, courts do not usually undertake to

review the character of the internal management of corporations as defined and declared by their votes.

Stockholders of a certain corporation who deposited their stock with a reorganization committee became entitled to receive two and one half shares of stock of another corporation for each share in the first corporation. The first corporation then voted to deliver two such shares in exchange for each share of the original company, and declared one half of a share as a "special dividend" on each share of the first corporation. Upon a hearing on a probate account of a trustee who as a stockholder of the original corporation received from the committee such two and one half shares of the second corporation for each of his shares in the first, an issue was, whether the one half share so received was capital or income. There was no evidence disclosing whether the "special dividend" was or was not payable from surplus. The judge of probate ruled that the "special dividend" should be accounted for as capital. On appeal, it was *held* that, whether the action of the judge of probate be considered a ruling of law or a finding of fact, it was wrong, and that the dividend should have been treated as income and a part of the estate of the life beneficiary.

In the absence of specific direction in the creation of a trust, an investment in property of a wasting nature in order to increase the income is not consistent with the duty of a trustee.

The same rule obtained in regard to property, not invested in accordance with sound principles, which came to trustees from the testator and was not specifically bequeathed, as governed in respect to new investments; and, when so received, such an investment should not have been allowed to continue but should have been converted promptly into safe investments.

Upon a request, at the hearing on the account above described, "6. That all dividends from mining stocks . . . belong entirely to capital or at least should be apportioned between capital and income," the judge of probate properly ruled "Request No. 6 is denied. If an improper investment is made or retained, the remainderman's remedy is by charging the trustee with the loss sustained by capital."

The judge of probate at the hearing of the account above described charged the trustee with the "loss . . . sustained by the trustee" by reason of the retention of certain mining stocks beyond a reasonable time after he received them. *Held,* that such charge in legal contemplation compensated the remaindermen for the failure of the trustee to convert.

Although the trustee did not appeal from the decree entered upon the account above described, it was *held,* that an appeal by remaindermen brought up the decree and this court might deal with the interest of persons affected by it other than the appellants, in so far as those interests were necessarily involved in the determination of the issues before the court.

A trustee has no right in his accounts to set off a loss, which he has sustained by reason of his improper dealing with one security, against a gain which as trustee he has effected in his dealing with another security.

With respect to the above described trustee's not paying off a mortgage on certain real estate of the trust and a contention by the remaindermen that the trustee should have sold securities to pay off the mortgage debt, the judge of probate rightly directed that a larger net income realized by retaining and not selling securities to pay off the mortgage should go to the life tenant, it not appearing that the capital was impaired by the failure of the trustee to sell securities and to pay off the mortgage.

PETITION, filed in the Probate Court for the county of Suffolk on February 13, 1930, for allowance of a substituted second account of the surviving trustee under the will of C. James Connelly.

Previous proceedings relating to the condition of the trust are described in the opinion.

The petition was heard by *Dolan*, J. Upon a request by the respondents Buckley and others, "6. That all dividends from mining stocks received since April 1, 1923, belong entirely to capital or at least should be apportioned between capital and income," the judge ruled: "Request No. 6 is denied. If an improper investment is made or retained, the remainderman's remedy is by charging the trustee with the loss sustained by capital." Other material facts and rulings and a final decree entered by order of the judge are described in the opinion. Parties interested in the remainder appealed.

*O. Storer,* (*J. J. Lucas* with him,) for the respondent Mary E. Connelly.

*J. L. Sheehan,* for the respondent Buckley and others.

*W. C. Creed,* for the petitioner, submitted a brief.

*J. P. Bell & J. J. Mansfield,* for the administrators with the will annexed of the estate of Agnes G. Connelly.

PIERCE, J. This case involves two separate appeals from a decree of the Probate Court allowing the second substituted account of James F. Creed, sole surviving trustee under the will of C. James Connelly, late of Boston, deceased. A decree allowing the trustee's first account was amended in *Lannin* v. *Buckley,* 256 Mass. 78, and on appeal, after rescript, was affirmed in 268 Mass. 106. A dispute between the life tenant and remaindermen was before the court in *Creed* v. *Connelly,* 272 Mass. 241.

C. James Connelly died on July 10, 1914. By his will, after payment of minor bequests, he left the rest of his estate in trust, the income to be paid to his wife, Agnes G. Connelly, during her lifetime, and the remainder over on her death. The widow died on August 22, 1929. On September 14, 1929, some of the remaindermen filed a petition in the Probate Court for partial distribution in kind of stocks of the trust estate. Not all of the remaindermen agreed to the distribution of the securities in kind; the petition was dismissed on December 19, 1929, and the stocks were ordered to be sold within a reasonable time.

The sale price of most of the stocks exceeded their appraised value when they were turned over to the trustees by the executors under the will. At times, however, during the term of the trust many of the stocks could have been sold at higher prices. The appellants seek to charge the trustees for the difference between the price of the stocks at their peak and the price at which they were sold. A trustee, to invest, is required to conduct himself faithfully and to exercise a sound discretion, observing how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, and considering the probable income as well as the probable safety of the capital involved. *Harvard College* v. *Amory*, 9 Pick. 446, 461. *Bowker* v. *Pierce*, 130 Mass. 262. *Dickinson, appellant*, 152 Mass. 184. *Taft* v. *Smith*, 186 Mass. 31. *Kimball* v. *Whitney*, 233 Mass. 321, 331. *Boston Safe Deposit & Trust Co.* v. *Wall*, 254 Mass. 464, 467. *Lannin* v. *Buckley*, 256 Mass. 78, 83. *Exchange Trust Co.* v. *Doudera*, 270 Mass. 226. The Probate Court found that the trustee throughout acted in good faith, although imprudently as to the investment in certain enumerated stocks. The trustee is chargeable, therefore, with failure to sell such stocks at the peak price only if such failure was an abuse of "the sound discretion and good judgment of a prudent man dealing with his own permanent investments." *Boston Safe Deposit & Trust Co.* v. *Wall, supra,* at page 467. The delay in selling the stocks after the death of the life tenant

was not unreasonable. As a reasonable man, the trustee could await the outcome of the petition for partial distribution in kind. He could not be held to forecast the sudden drop in stock prices in October and November, 1929. He is not chargeable with the difference between the market price of the stock at the life tenant's death and the price of such stock at the time of the actual sale. Compare *McCoole* v. *Mackintosh*, 267 Mass. 86, 94, 95; *State Street Trust Co.* v. *Walker*, 259 Mass. 578.

The allowance of compensation to the trustee "to be paid to him out of the principal of the trust estate" was proper. In making the allowance the Probate Court considered only "his services subsequent to the death of the life beneficiary in all matters relative to the closing up of the trust estate, including services in relation to the petition for distribution in kind; the petition for instructions as to disposition of proceeds of sale of the 'Fenway' land; the petition for determination of the validity of the assignment of Mary E. Connelly, one of the remaindermen; the adjudication of the account now before the court, and his services in the litigation as to the trustee's first account, where the contest was by the remaindermen, related to principal, and in which the accountant prevailed save as to certain mathematical errors." See *Lannin* v. *Buckley*, 256 Mass. 78, and *Lannin* v. *Buckley*, 268 Mass. 106. In the allowance to the attorney from principal the judge considered only his services rendered in connection with the litigation as to the trustee's first account, *Lannin* v. *Buckley*, 256 Mass. 78, and his services in connection with the closing of the trust estate after the death of the life beneficiary. For other services rendered by the trustee and the attorney the income account was charged, without objection from the estate of the life tenant. Compensation for services rendered after the death of the life tenant is payable out of capital. *Denny* v. *Allen*, 1 Pick. 147, 149. *Parker* v. *Ames*, 121 Mass. 220, 222. *Parkhurst* v. *Ginn*, 228 Mass. 159, 170. "The regular annual or periodically recurring expenses arising in the administration of a productive trust commonly are paid out of the income, while

extraordinary and unusual expenses are chargeable against the capital. The costs of litigation generally fall in the latter class." *Cogswell* v. *Weston,* 228 Mass. 219, at page 222. There is nothing in the facts proved which required the judge of probate to apply a different rule. The services rendered by the trustee and his attorney in the litigation over the first account were not regular or periodically recurring expenses; they were a part of the litigation and do not appear to be excessive or unreasonable. *Gray* v. *Hemenway,* 212 Mass. 239, 243. *Loring, petitioner,* 227 Mass. 392, 395. The compensation to be allowed the trustee and the attorney was such compensation as should be adjudged reasonable. *Howard* v. *Hunt,* 267 Mass. 185, 187. G. L. c. 206, § 16. The allowance of the trustee's compensation from the principal for services in bringing a petition for determination of the validity of the assignment by Mary E. Connelly, one of the remaindermen, obviously should be charged not against the estate generally but against the distributive share of Mary E. Connelly.

On their appointment the trustees received from the executors of the will of James C. Connelly forty-eight shares of the stock of The Pullman Company. For each share of stock the trustees received two and one half shares of Pullman Incorporated. The Probate Court ruled "that the proceeds of all the shares of Pullman Incorporated constitute principal." The question here presented is whether twenty-four shares of the stock of Pullman Incorporated, paid as a dividend to the trustee as a stockholder of The Pullman Company of record on July 30, 1927, each stockholder receiving one half share of the stock for each share of The Pullman Company stock held by him, belong to principal or income.

The exchange of stock of The Pullman Company for stock of the Pullman Incorporated grew out of the reorganization of The Pullman Company. The record discloses that the plan of reorganization was submitted and recommended to the stockholders of The Pullman Company by its board of directors; that the plan provided for the deposit of stock with a reorganization committee. Article

11 of the stock deposit agreement provided that "The Committee shall act in respect of the deposited stock solely as the agents and attorneys in fact of the Depositing Stockholders, and the deposit of the certificates of said stock shall not be deemed to transfer, assign or vest to or in the Committee any title or beneficial interest to or in the said certificates of stock" represented by any certificate of deposit. Article 14 read: "Upon the consummation of the Plan, each registered owner of a Certificate of Deposit issued hereunder shall, upon the surrender of such Certificate of Deposit, properly endorsed, be entitled to receive from the Committee his pro rata shares of the capital stock of such new company (organized for the purpose of carrying out the Plan), which may have been received by the Committee either in exchange for the shares of stock of The Pullman Company deposited hereunder, or by way of a stock dividend, if any, payable in the shares of stock of any new company." On July 19, 1927, the reorganization committee wrote the holders of certificates of deposit of capital stock of The Pullman Company: " . . . The Pullman Company has declared a special dividend payable in stock of Pullman Incorporated on August 15, 1927, to stockholders of The Pullman Company of record at the close of business on July 30, 1927, at the rate of one-half share of such stock of Pullman Incorporated for each one share of stock of The Pullman Company . . . Over ninety per cent. of the stock of The Pullman Company has been deposited under the Plan of Reorganization. The undersigned [the committee] acting on behalf of the depositing stockholders and pursuant to the terms of the Stock Deposit Agreement, is to receive shares of stock of Pullman Incorporated in exchange for deposited shares of The Pullman Company on a basis of two shares of stock of Pullman Incorporated for each one share of stock of The Pullman Company. Accordingly, upon the consummation of the Plan the holders of Certificates of Deposit upon the surrender thereof will be entitled to receive 2½ shares . . . for each one share . . . deposited."

Ordinarily when a dividend is declared of stock of an-

other corporation a distribution of such stock in its legal effect is like a cash dividend. *Leland* v. *Hayden*, 102 Mass. 542. *Gray* v. *Hemenway*, 212 Mass. 239. *Gray* v. *Hemenway*, 223 Mass. 293. *Old Colony Trust Co.* v. *Jameson*, 256 Mass. 179. *Gray* v. *Hemenway*, 268 Mass. 515, 520. The instant case, unlike the cases cited, does not disclose whether the "special dividend" was or was not payable from surplus, but The Pullman Company described this transaction a "dividend" and "Commonly, the assertion of a corporation as to the nature of its corporate action, made in good faith and not obviously wrong or designed as a cover for some ulterior design, is accepted as true. Although the substance and intent of the action taken, as shown by the votes, are to be ascertained, courts do not usually undertake to review the character of the internal management of corporations as defined and declared by their votes." *Dodge* v. *Commissioner of Corporations & Taxation*, 273 Mass. 187, 195. *Gray* v. *Hemenway*, 268 Mass. 515. "Everything is made to turn upon the action of the corporation." *D'Ooge* v. *Leeds*, 176 Mass. 558, 560. *Davis* v. *Jackson,* 152 Mass. 58. *Smith* v. *Cotting*, 231 Mass. 42. *Lannin* v. *Buckley*, 256 Mass. 78, 84. The case at bar is distinguishable from *Gifford* v. *Thompson*, 115 Mass. 478, *Brownell* v. *Anthony*, 189 Mass. 442, *Anderson* v. *Bean*, 272 Mass. 432, 441–444, and from *Heard* v. *Eldredge*, 109 Mass. 258, as explained in *Gray* v. *Hemenway*, 268 Mass. 515, 522, 523. We think the action of the Probate Court in this respect was wrong, whether such action be considered a ruling of law or a finding of fact, and that the dividend should have been treated as a part of the estate of the life beneficiary.

The Probate Court properly refused to apportion the dividends from the mining stock between principal and income. In the absence of specific direction in the creation of a trust, an investment in property of a wasting nature in order to increase the income is not consistent with the duty of a trustee. The same rule obtains in regard to property which comes to trustees from the testator not specifically bequeathed as obtains in respect to new invest-

ments, and when so received it should not be allowed to continue but should be converted promptly into safe investments. *Kinmonth* v. *Brigham*, 5 Allen, 270, 278. *Lannin* v. *Buckley*, 256 Mass. 78, 83.

The Probate Court charges the trustee with the "loss . . . sustained by the trustee" by reason of the retention of the stocks beyond a reasonable time after he received them. This charge in legal contemplation compensates the remaindermen for the failure of the trustee to convert. *Kinmonth* v. *Brigham, supra. Old Colony Trust Co.* v. *Shaw*, 261 Mass. 158, 163. For all practical purposes such shares as were held by the trustee were worth what they were quoted in the market. The holder of these stocks was under no obligation to retain them until the mines were exhausted and he could at any time escape from the possibility of diminished value by reason of wastage by selling the stocks in the market. In a word, the rule in *Howe* v. *Earl of Dartmouth*, 7 Ves. Jr. 137, is not applicable to the state of facts here disclosed.

The trustee has not appealed, but the appeal of the remaindermen brings up the decree and the court may deal with the interest of others affected by it, in so far as those interests are necessarily involved in the determination of the issues before the court. G. L. c. 215, § 28. *Harris* v. *Harris*, 153 Mass. 439. *Swift* v. *Crocker*, 262 Mass. 321.

There was a slight gain in the sale of the group of copper mining stocks over the inventory value. There was a substantial gain over inventory values in the sale of all stocks. The trustee contends that "the total gains should be taken into consideration in considering whether or not the trustee should be held for any losses," and further contends that "the beneficiaries agreed not to claim any loss or depreciation on the sale of any particular stocks by reason of the substantial gain on the sale of stocks." As above stated, with citation of authorities, a trustee must exercise reasonable skill and prudence and sound discretion in making or retaining each investment and is chargeable with any loss by failing to do so. The gain in each investment belongs to the trust estate and in no way can a trustee reap a personal

profit from it. *Bowen* v. *Richardson*, 133 Mass. 293. *Ball* v. *Hopkins*, 268 Mass. 260, 269–270. A trustee cannot off-set a loss for which he is liable by a gain belonging not to him but to his *cestui*. Neither the decision in *Lannin* v. *Buckley*, 256 Mass. 78, nor the decision in *Lannin* v. *Buckley*, 268 Mass. 106, is *res judicata* as to the liability of the accountant for losses sustained on the mining company stock. In each of these cases the question now in issue was expressly left undecided. The Probate Court found that the trustee's retention of the mining stocks was not agreed to by all the remaindermen and that they never ratified the conduct of the trustee in retaining them. This finding depended on oral evidence of witnesses and must stand. *Ball* v. *Hopkins*, *supra*. It appears from the record that the Probate Court in disallowing the loss of $1,900 on the sale of fifty shares of Quincy Mining Company stock, intended to offset against it $333.65 received from the sale of Quincy Mining Company rights. The failure to allow this was an apparent oversight and it should be allowed.

The testator left a lot of vacant land, partially productive, which was subject to a mortgage of $26,000. In June, 1924, the lot was sold and the proceeds above the mortgage were credited to capital. In *Creed* v. *Connelly*, 272 Mass. 241, the court held that the income could not be reimbursed from the proceeds of the sale for the carrying charges of the land. The appellants now contend that the trustee should have sold securities to pay off the mortgage debt; that "the retention of this mortgage did not increase the net worth of the estate," but that "it did increase its assets and as the income from $26,000 worth of the securities of the estate exceeded the interest on the mortgage, this excess belonged to capital, which was hypothecated for the loan." Assuming the trustee should have sold securities to pay off the mortgage, it does not appear that the capital was impaired by the failure to do so and the larger net income apparently secured by keeping the capital invested in securities should go, as the Probate Court ordered, to the life tenant.

The appellants contend that the "values" of Anaconda

and Amalgamated were increased by $3,100 above the amount they were shown in the first trustee's account, and that consequently schedule A should be increased by that amount. There is no evidence in the record to support this contention. The appellants also contend that schedule A should be increased by items 362 and 363 of schedule D. There is no evidence in the record that these items came out of capital, and the Probate Court so found. The appellants sought to raise the question "as to their rights to discovery and proof against trustee Creed as to assets possessed by the testator at his death as owner, but not included in either the executor's or trustee's inventories." The Probate Court ruled that the appellants had the right to make this inquiry; that the burden of proof was on the trustee "to show that five hundred eighty shares of stock of the American Telephone & Telegraph Company were the number of shares of stock of that corporation ultimately held by him as such trustee," and ruled "that he has sustained that burden." He found "that the counsel requesting this ruling agreed in behalf of his clients in open court, after a long continuance for investigation by them, that the quantities of stock formerly held by the accountant, as set forth in schedule A of the substituted record account, are correctly stated therein," and ruled that "they are now estopped to contend otherwise." We think the evidence in the record supports the finding and ruling of the probate judge, without a more particular statement of it in detail.

It results that the appellant estate of Agnes G. Connelly is entitled to the proceeds of twenty-four shares of Pullman Incorporated; that item 29 of schedule B is to be amended by striking out the figures 1,900 and substituting therefor the figures 1,566.35 and disallowed in that sum; and that as so modified the decree should be affirmed.

*Decree accordingly.*