[No. 24799. Department Two. March 5, 1934.]

CAROLINE E. HORTON et al., Appellants, v. IDA E. BRIGGS et al., Respondents.[1]

Peters, Evans & McLaren, for appellants.

D. C. Conover and Haight & Haight, for respondents Denny et al.

Elder & Nievinski, for respondent Nievinski.

TOLMAN, J.—Appellants, as plaintiffs, brought this action for the purpose of obtaining a construction of the will of Dexter Horton, deceased, as applied to certain trust funds provided for and established under the

[1]Reported in 29 P. (2d) 925.

terms of such will; for the allowance of compensation to them as such trustees and an allowance to their counsel for services in the matter thus presented to the court.

By stipulation, agreement and consent, all matters relating to construction of the terms of the will as applied to the several trust funds were adjusted between the interested parties, and the matters so agreed upon were, by consent, adjudicated in the decree entered by the trial court. The only contest submitted to the trial court was that relating to the allowance of fees to the trustees and their attorneys.

The trial court found the amount of the total income of each of the three trust funds for the twenty-eight year period of their existence and management by the trustees, and allowed the trustees a fee of five per cent of such income on each of such trust funds. To the plaintiffs' attorneys, an allowance of one thousand dollars was made, chargeable one-fourth to trust fund "A", one-fourth to trust fund "B" and one-half to trust fund "C." Costs were allowed, payable pro rata out of the excess income of the several trust funds, and the court reporter's fees were charged against the several funds in the same proportion as the attorneys' fees. The decree continued:

"IT IS PROVIDED, HOWEVER, that no portion of any of the fees hereinabove allowed are chargeable against or payable out of the principal amounts of any of said Trust Funds "A," "B" and or "C."

"IT IS FURTHER PROVIDED as to Trust Fund "A" that during the life time of the life beneficiary, Ida E. Briggs, the income shall be used first to pay the regular monthly requirements of said life beneficiary. Any excess income may be applied pro rata toward the payment of trustees' fees of $3,109.42, attorneys' fees of $250, court reporter's fee of $7.50 and one-third of the taxable costs. During the life of said beneficiary each

and all of said fees are payable only out of said excess income. If at the death of said beneficiary there remains any unpaid portion of said trustees' fees, attorneys' fees, court reporter's fee or costs, the same may be paid out of any property or funds remaining after paying to the Methodist Protestant University of Kansas City, Kansas, funds or properties of the then present value of $33,333.33 less whatever allowances the court may then make against the same for additional services rendered, also less so much thereof as shall have been used by said trustees for the requirements of said Ida E. Briggs if it becomes necessary to use some of the principal for the maintenance, support or education of Ida E. Briggs or for payment of her funeral and other expenses.

"IT IS FURTHER PROVIDED as to the Trust Fund "B" that during the life time of the life beneficiary, Alfred Briggs, the income shall be used first to pay the regular monthly requirements of said life beneficiary. Any excess income may be applied pro rata toward the payment of trustees' fees of $2,618.00, attorneys' fees of $250, court reporter's fee of $7.50 and one-third of the taxable costs. During the life of said beneficiary each and all of the said fees are payable only out of said excess income. If at the death of said beneficiary there remains any unpaid portion of said trustees' fees, attorneys' fees, court reporter's fee or costs the same may be paid out of any property or funds remaining after paying to the Ladies' Relief Society of the City of Seattle (or to whoever be then entitled thereto), funds or properties of the then present value of $33,-333.33 less whatever allowances the court may then make against the same for additional services rendered also less so much thereof as shall have been used by said trustees for the requirements of said Alfred Briggs if it becomes necessary to use some of the principal for the maintenance, support or education of Alfred Briggs or for payment of his funeral and other expenses.

"IT IS FURTHER PROVIDED as to Trust Fund "C" that during the lifetime of the life beneficiary Laura Briggs Trethewey the income shall be used first to pay the regular monthly requirements of said life beneficiary.

It having been established that the income is received intermittently and not regularly each month and that Laura Briggs Trethewey requires $100 per month she shall be paid the income from Trust Fund ''C'' up to the sum of $1,200 per annum. Any excess income over that amount may be applied pro rata toward the payment of trustees' fees of $2,218.69, attorney's fees of $500, court reporter's fee of $15.00 and one-third of the taxable costs. If at the death of said beneficiary there remains any unpaid portion of said trustees' fees, attorneys' fees, court reporter's fee or costs the same may be paid out of any property or funds remaining after paying, to those persons then having an interest in said principal, funds or properties of the then present value of $28,641.11 less whatever allowances the court may then make against the same for additional services rendered.

''IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the fees as taxed against the future excess income of each trust shall only be payable out of the same and not paid out of excess income of any of the other two nor out of the principal of any of the three.''

The plaintiffs have appealed only from that part of the decree which fixes the manner of the payment of the several allowances. There is no cross-appeal.

 Respondent seems somewhat to question the allowance of any fees to the trustees after the lapse of so long a period as twenty-eight years with no request or intimation that they expected compensation, and after the income arising from the funds had been disposed of year by year without thought of such a charge against it. But, as the record stands, and in the absence of any appeal from that part of the decree awarding the allowances, we are not now privileged to review that question.

 The testator established each of the trust funds for the benefit and maintenance of a named grandchild, each one of whom he had reason to know or believe would always be dependent.

506

The will provided as to each fund that the interest accruing, or so much thereof as might be necessary, should be used for the support and maintenance of the beneficiary, and,

"If said interest shall be insufficient for the purposes, then in that event my said executors and trustees, in their discretion are authorized and empowered to use so much of the principal for such purposes as they shall deem necessary and expedient."

It was provided that, after the death of the beneficiary, all of the unexpended principal and interest thereon, if any, constituting the particular trust fund should pass to a named legatee, or class of legatees.

Plainly, it was the purpose of the testator to provide adequately and amply for each of these three beneficiaries, and therefore the fund must not be encroached upon so as to defeat that purpose. Consequently, the trial court, under the authorities hereinafter cited, correctly held that none of these allowances should now be paid from the principal of either fund. To do so, would necessarily lessen the income, and might result in the exhaustion of the entire fund during the lifetime of the beneficiary.

By the same line of reasoning, it would appear to be equally plain that, during the lifetime of the beneficiaries, only the excess income may be diverted to meet these charges without likewise endangering the testator's purpose.

But the decree of the trial court goes further than this, and provides that, upon the death of the beneficiary, the whole unimpaired principal of the trust fund shall go to the remainderman, or final legatee, and that these charges, so far as they are then unpaid, can be paid only out of a possible capital increase.

This, we think, puts upon the trustees and their

attorneys the burden of rendering free service and paying all court costs unless they are so fortunate as to increase the several funds over and above all of the needs of the beneficiaries. In other words, the rights of those finally to take are placed above the allowed claims for services and litigation expenses.

As we read the will, it manifests no such intention. The testator was concerned for the welfare of the dependent grandchildren. He meant that their needs should be met, even though the principal be used for such purpose. The costs of administration and necessary litigation, while ordinarily payable out of income if that be sufficient, may, under the circumstances here shown, be subordinated to the security of the dependent beneficiaries, but we are unable to see any good reason why such administrative expenses should be subordinated to the rights of the final legatee or remainderman. He should take what is left after the needs of the dependent beneficiary, including all costs of administration, have been fully met and discharged.

"It is common desire of testators to favor with their bounty their own kin; hence, in the absence of a clear intention to the contrary, a testator is presumed to have intended that his estate should go in accordance with the laws of descent and distribution, and if any ambiguity exists in the will unless there is a manifest intention to the contrary, this presumption will be applied as an aid in construing the will. 'The just manner of construing the will is to give it such an application that the plans of the testator in distribution of his estate shall be fairly carried out, and no disappointment shall happen to those who appear to have been equally the objects of his bounty.' Accordingly, in interpreting wills of doubtful meaning, favor will be accorded to those persons who appear to be the special objects of the testator's bounty. . . .

"In case of ambiguity in the will, the law favors such construction as will be advantageous to heirs at

law and next of kin in preference to strangers, or persons not so closely related to the testator, . . ." Thompson on Construction of Wills, §§ 66 and 67.

"Unless a statute otherwise provides, a trustee's compensation must be paid out of income if there is income available to meet it, but cases may occur where this cannot be done, and then the commissions may be paid out of the body of the fund. There is no hard and fast rule which prevents trustees' compensation from being charged to principal if the circumstances so warrant, and the matter is more or less in the discretion of the court." 65 C. J. 917, § 817.

See, also, *Creed v. McAleer*, 275 Mass. 353, 175 N. E. 761, 80 A. L. R. 1117, and *In re Hoyt*, 160 N. Y. 607, 55 N. E. 282, 48 L. R. A. 126.

We conclude that, under the particular facts shown by the record, the administrative expenses here considered should, so far as possible, be paid out of income, but, because of the testator's manifest desire to provide for dependent beneficiaries, the payment must be only out of excess income. When, however, each life estate terminates, and before payment to the remainderman, the unpaid portion of such allowances, if any, should then be paid and discharged out of the trust fund, either interest, principal, or both, which remains in the hands of the trustees, and there will thus pass to the remainderman the balance then remaining in the fund after all such administrative charges have been satisfied. The trial court is directed to modify his decree to conform to these views.

Neither party will recover costs in this court, and no further allowance will be made for attorney's fees in this court.

Remanded for modification as directed.

BEALS, C. J., BLAKE, GERAGHTY, and HOLCOMB, JJ., concur.